■ HAROLD ZARETSKY, Appellant, v FEIGE ZARETSKY, Respondent. [888 NYS2d 84]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by his brief, from stated portions of an amended judgment of the Supreme Court, Nassau County (Sher, J.), entered June 23, 2008, which, upon a decision of the same court dated December 6, 2007, made after a nonjury trial, and an order of the same court dated April 2, 2008, inter alia, awarded the defendant 100% of the equity in and sole title to the marital residence, the sum of $258,527 as part of the equitable distribution of marital assets, nontaxable maintenance in the sum of $10,000 per month for a period of seven years, and child support in the sum of $733 per week.

Ordered that the amended judgment is modified, on the law and the facts, (1) by deleting the provision thereof awarding the defendant sole title to the marital residence, (2) by deleting the provision thereof awarding the defendant the sum of $258,527 as part of the equitable distribution of marital assets, and (3) by deleting the provision thereof awarding the defendant child support in the sum of $733 per week, and substituting therefor a provision awarding the defendant child support in the sum of $677 per week; as so modified, the amended judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith, and for the entry of an appropriate second amended judgment thereafter.

The plaintiff former husband and the defendant former wife were married on May 29, 1994 and have three unemancipated children. Both parents were born deaf. For most of the marriage, the defendant was a stay-at-home mother. Throughout the marriage, the plaintiff worked for Maxi-Aids, Inc. (hereinafter Maxi-Aids), a company established by his father, to which the plaintiff was gifted a one-third interest prior to his marriage. In 2004 and 2005 the plaintiff's gross income exceeded $500,000, and he received substantial additional funds from both parents. Also, since 1994, the plaintiff has held a one-half interest in M & H Realty, Inc., which owns the building from which Maxi-Aids operates (hereinafter the M & H property).

Following the trial, the court awarded the defendant 100% of the equity in the marital residence, as well as sole title to the

marital residence and a cash award in the sum of $258,527. The plaintiff contends that this distribution was improper.

Initially, the plaintiff contends that he was entitled to a $400,000 separate property credit for the marital residence, which was purchased in 2000. That figure represents a $150,000 down payment provided by the plaintiff's father, as well as $250,000 in renovation expenses purportedly paid by the father. While a separate property credit may be warranted when a marital asset is purchased with property that was gifted to only one spouse (*see e.g. Vogel v Vogel*, 156 AD2d 671, 673 [1989]), in this instance, the record reflects that any moneys associated with the home purchase and renovations were gifts to both parties. Accordingly, the plaintiff is not entitled to a separate property credit (*see McSparron v McSparron*, 87 NY2d 275, 282 n [1995]; *Fiedler v Fiedler*, 230 AD2d 822, 823 [1996]; *cf. Damato v Damato*, 215 AD2d 348, 349 [1995]).

We agree, however, with the plaintiff's contention that the court's award to the defendant of 100% of the equity in the marital residence was improper under the circumstances. While many of the comments made by the plaintiff during the trial regarding his financial obligations to the defendant were troubling, "we do not find sufficient basis in the record to justify a forfeiture of his equitable interest in the marital home" (*Relf v Relf*, 197 AD2d 611, 612 [1993]).

The court based its award to the defendant of $258,527 and sole title to the marital residence not only on its finding that she was entitled to all of the equity in the home, but also, on certain findings with respect to Maxi-Aids and the M & H property. Specifically, the court determined that the defendant was entitled to 40% of the plaintiff's one-half interest in the M & H property, as well as a 40% share of the total appreciated value of the plaintiff's one-third interest in Maxi-Aids.

Upon a review of the record, however, we find that the defendant is not entitled to any share of the plaintiff's interest in the M & H property. The plaintiff acquired the property very shortly after the parties' May 1994 wedding. "Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property" (*Embury v Embury*, 49 AD3d 802, 804 [2008] [internal quotation marks omitted]). Here, the plaintiff met his burden. Specifically, the plaintiff demonstrated that the M & H property was purchased with an $80,000 down payment from the plaintiff's father and brother. The evidence reveals that, in contrast to the money given for the marital residence, the down payment was intended

as a gift to the plaintiff, rather than to both parties. The defendant never had title to the property.

The defendant also is not entitled to any share of the appreciated value of the M & H property. While there are circumstances under which "appreciation should, to the extent it was produced by efforts of the titled spouse, be considered a product of the marital partnership and hence, marital property," the appreciation remains separate property if it resulted purely from market forces, as opposed to the titled spouse's efforts (*Price v Price*, 69 NY2d 8, 18 [1986]). Here, the record reflects that no efforts on the plaintiff's part resulted in the appreciation of value of the M & H property; rather, that property appreciated solely due to market forces (*see Feldman v Feldman*, 194 AD2d 207, 217 [1993]; *Robertson v Robertson*, 186 AD2d 124, 125-126 [1992]).

With respect to the plaintiff's one-third interest in Maxi-Aids, although the plaintiff and his father attempted to downplay the plaintiff's efforts, the record reveals that the appreciation of Maxi-Aids during the marriage was due, at least in part, to the plaintiff's active participation, which was facilitated by the defendant's indirect contributions as a homemaker. Accordingly, the defendant is entitled to a share of the appreciated value of that asset (*see Hartog v Hartog*, 85 NY2d 36, 47 [1995]; *Price v Price*, 69 NY2d at 17-18). The Supreme Court, however, failed to articulate fully its basis for awarding the defendant 40% of the *total* appreciated value of the plaintiff's interest in Maxi-Aids, as opposed to a portion thereof. Before making the distributive award, the court should have considered the extent and significance of the plaintiff's efforts in relation to the active efforts of others and any additional passive or active factors, and determined what percentage of the total appreciation constituted marital property subject to equitable distribution (*see Hartog v Hartog*, 85 NY2d at 48-49; *cf. Imhof v Imhof*, 259 AD2d 666, 666-667 [1999]; *Ferrugiari v Ferrugiari*, 226 AD2d 498, 499 [1996]).

In light of the foregoing, the entire distributive award must be reconsidered and recalculated. Therefore, we remit the matter to the Supreme Court, Nassau County, for a new determination on the issue of equitable distribution.

The defendant also contends that the maintenance award is excessive, especially when combined with the child support award and various additional expenses. "[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts" (*DiBlasi v DiBlasi*, 48 AD3d 403, 404 [2008] [internal quotation marks omitted]). "The court may or-

der maintenance in such amount as justice requires considering, *inter alia*, the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the duration of the marriage, the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance" (*O'Sullivan v O'Sullivan*, 282 AD2d 586, 586 [2001] [internal quotation marks omitted]; *see Hartog v Hartog*, 85 NY2d at 52). Additionally, "the court must consider the reasonable needs of the recipient spouse" (*Chalif v Chalif*, 298 AD2d 348, 348 [2002]). Here, the Supreme Court properly considered the relevant factors, which justify the provision of a substantial maintenance award (*id.* at 348-349).

The plaintiff's contention that the seven-year duration of the maintenance award is excessive is without merit. In light of, inter alia, the duration of the parties' marriage, the defendant's limited education, the years she devoted to child-rearing, and the parties' standard of living, a period of seven years is entirely appropriate (*see DiBlasi v DiBlasi*, 48 AD3d at 404; *O'Sullivan v O'Sullivan*, 282 AD2d at 586; *Morrissey v Morrissey*, 259 AD2d 472, 473 [1999]; *Damato v Damato*, 215 AD2d 348, 349 [1995]).

Although the Supreme Court properly calculated the plaintiff's annual child support obligation, it then made a mathematical error in determining the weekly child support obligation. The plaintiff's weekly child support obligation is $677, which is derived by dividing $35,203 (the plaintiff's annual child support obligation) by 52 (*see Matter of Kalapodas v Kalapodas*, 305 AD2d 1047, 1049 [2003]; *Bohnsack v Bohnsack*, 185 AD2d 533, 534 [1992]).

The plaintiff's remaining contentions are without merit. Moreover, to the extent that the pro se defendant contends that the Supreme Court erred, we note that she failed to cross-appeal from the amended judgment. Mastro, J.P., Fisher, Angiolillo and Leventhal, JJ., concur.